UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA LEE JUE,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | CASE NO. 1:14-CV-1046 SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER<br><br>(Doc. 18) |

Plaintiff Pamela Lee Jue, by her attorneys, the Law Offices of Lawrence D. Rohlfing, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, this Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based on proper legal standards.

I.   BACKGROUND

A.   Procedural History

In March or April 2011, Plaintiff applied for disability insurance benefits. Plaintiff alleged an onset of disability date of December 13, 2008. The Commissioner initially denied the claims on July 13, 2011, and upon reconsideration again denied the claims on October 21, 2011. On December 7, 2011, Plaintiff filed a timely request for a hearing.

On October 29, 2012, and represented by counsel, Plaintiff appeared and testified with the assistance of a Spanish interpreter at a hearing presided over by John Cusker, Administrative Law Judge ("the ALJ").  See 20 C.F.R. 404.929 *et seq*.  An impartial vocational expert, Susan D. Green ("the VE"), also appeared by telephone and testified.

On February 21, 2013, the ALJ denied Plaintiff's application.  The Appeals Council denied review on May 1, 2014.  The ALJ's decision thus became the Commissioner's final decision.  See 42 U.S.C. § 405(h).  On July 2, 2014, Plaintiff filed a complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

B.   Plaintiff's Testimony

At the administrative hearing, Plaintiff was fifty years old. She had graduated from high school and worked as a medical assistant for about twenty-eight years.  She testified that she was fired in December 2008 because she was unable to do the tasks within the time limit. She did not try to get another job.

Plaintiff testified that she plays tennis with people she knows three times a week for about an hour. She played in tennis tournaments once a month and took lessons. In addition, she exercises for an hour in a gym every day. She also enjoyed listening to music and learning about her laptop computer. She would go out every day, sometimes to go shopping with her father but also shopping for herself alone. She would sleep for an hour during the day. She attended religious services once a week, which lasted about an hour. She went to the Apple store about every two weeks to know more about her computer, and she was able to remember what she was told.

Plaintiff lived with her father. She felt that it was difficult for her to care for him. Plaintiff drove him everywhere including various shopping locations, his golf club, and the tennis club. Her father handled her finances. She did all the laundry, and some cooking and housework. She took care of her own grooming.

Plaintiff was under the care of a psychiatrist and had regular one-on-one appointments with a therapist every other week. She felt that the medications were helpful. She testified that she would smell and hear things at night, that she had a lot of problems with anxiety related to caring for her father. She gets overwhelmed driving her father around because he talks while she drives

2

or yells at her. She noticed that she could not concentrate. She testified that bipolar disorder caused her to have some good days and some bad days. She used to feel so depressed that she could not leave the house, but it had been a few years since then. She testified that she cried every day for the past two months, but she was able to get out of the house every day.

### C. Relevant Medical Record

Plaintiff met with psychiatrist William L. Siegfried, M.D., about once a month from June 2007 to January 2009. She had been diagnosed with bipolar disorder and was prescribed several medications. She was hospitalized three times: in August 2008, December 2008, and January 2009. In August 2008, she was brought in by her family because she had been hearing voices, and was reportedly out of control. AR 251. In December 2008, her father brought her in for complaining of depression, passive suicidal ideations, excessive anxiety, pacing episodic agitation, and acting strangely at times. AR 239. Approximately six days after being discharged in December 2008, in January 2009, she was brought in by her family because she was complaining of feeling depressed, worried, unable to sleep, having racing thoughts and being extremely agitated. AR 233. Each hospital stay was about ten days and she was released in stable condition.

In February 2009, and through the time of the hearing, Plaintiff began receiving regular care from psychiatrist Mathew House, D.O. He also diagnosed Plaintiff with bipolar disorder and maintained and adjusted her medication. Plaintiff had sporadic appointments with Dr. House in 2009 and 2010, with several months without appointments. Beginning May 2011, Plaintiff began keeping monthly appointments with Dr. House. During 2011 and 2012, Plaintiff was dealing with her father's illness, which was difficult and made her sad at times. However, Dr. House repeatedly and consistently noted stable mood, normal speech, no suicidal ideations, no psychosis, and euthymic affect. AR 377, 401, 405, 407, 410, 413, 424, 429, 437, 440, 443, 447. Her thought content when noted, was liner and coherent without flight of ideas or loosening of associations, and her cognition grossly intact. AR 365, 377, 407, 410, 413, 437, 440, 443, 447. Only occasionally, her mood and effect were "down" (AR 365, 369, 420) or "anxious" (401). However, Dr. House noted that she had "appropriate sadness while discussing father." AR 400.

During the same time frame of 2009-2012, Plaintiff attended group therapy sessions with

Nadia Orme, MFT, approximately once a week. She began individual therapy sessions with Ms. Orme in August 2012. Throughout 2011 and 2012, Ms. Orme also consistently noted euthymic mood and affect, normal speech, goal-directed and logical thought process, no delusions, and generally cooperative and friendly demeanor. When she began individual therapy two months before the administrative hearing, her mood was down; however, she still had normal speech, goal-directed and logical thought process, no delusions, and was cooperative and friendly. AR 396, 399, 402, 403. In August and September, she reported bouts of crying, but she was still able to get out and play tennis. AR 402, 403.

In July 2012, psychologist John E. Mourot, Ph.D., reviewed Plaintiff's medical records and completed a psychiatric review technique form and a mental residual functional capacity assessment. AR 336. Dr. Mourot recognized moderate limitations in certain areas including the ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal work-week and work-day without interruptions and unreasonable rest periods, and to respond appropriately to changes in the work setting. Dr. Mourot elaborated in his functional capacity assessment that Plaintiff's symptoms appeared to be stable with medication. He noted her daily activities and her various difficulties and found that objective evidence did not support marked impairment in adaptive functioning. It appeared that Plaintiff was able to perform work where interpersonal contact is routine but superficial, complexity of tasks is learned by experience, tasks have several variables and require judgment within limits, and supervision is required for little routine, but detailed for non-routine, tasks.

Dr. House provided a Mental Assessment of Plaintiff in November 2012. AR 461. He noted that she was markedly limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain a schedule, to sustain an ordinary routine without special supervision, to complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to ask simple questions or request assistance, to accept instruction and respond appropriately to criticism from supervisors, to respond

appropriately to changes in the work setting, to travel in unfamiliar places, and to set realistic goals or make plans independently of others. He found that she was moderately limited in the ability to remember locations and work-like procedures, to carry out short and simple instructions, to maintain attention and concentration for extended periods, to work in coordination within a proximity to others without being distracted, to make simple work-related decisions, to interact appropriately with the general public, to get along with coworkers without distracting them, and to be aware of normal hazards and take appropriate precautions. Dr. House did not complete the functional capacity assessment, which requested an explanation of the findings in narrative form.

### D. Vocational Expert Testimony

At the administrative hearing, the VE classified Plaintiff's past work as medical assistant (DOT # 079.362-010, light, SVP 6). The ALJ asked the VE to assume a hypothetical person with the same age, education, and work experience as Plaintiff, who was able to perform work where interpersonal contact is routine but superficial, where the complexity of tasks is learned by experience, tasks have several variables and require judgment within limits, supervision required is very little to routine, but more detailed supervision for non-routine tasks. The VE opined that such an individual could perform Plaintiff's past work.

The ALJ then directed the VE to assume a second hypothetical person who had no significant limitation in the ability to remember locations and work by procedures, understand and remember very short simple instructions, carry out very short and simple instructions, maintain activities within a schedule, sustain an ordinary routine without special supervision, and work in coordinational proximity to others and make simple related decisions. This hypothetical person also had no significant limitations in social interaction, awareness of normal hazards, and ability to travel unfamiliar places. This hypothetical person was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods, and ability to complete a normal work day and work week without interruption from symptoms. The VE opined that such a hypothetical person would not be able to perform Plaintiff's past work, but she could perform other work which involved simple, repetitive tasks. The VE identified industrial cleaner (DOT # 381.687-018,

medium, SVP 2), hand packager (DOT # 920.587-018, medium, SVP 2), and sorter (DOT 222.687-014, light, SVP 2). The VE testified that there were a significant number of each of these jobs in California and in the nation.

### E. Disability Determination

After considering the evidence, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. He found that Plaintiff had bipolar disorder, which significantly limited her ability to perform basic work activities. The ALJ found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment. He found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with some nonexertional limitations. He found that Plaintiff was able to perform work where interpersonal contact is routine but superficial, complexity of tasks is learned by experience, tasks have several variables and require judgment within limits, and supervision is required for routine tasks, but detailed for non-routine tasks. The ALJ concluded that Plaintiff was unable to perform her past relevant work as a medical assistant, and that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. Hence, he determined that Plaintiff was "not disabled."

## II.   LEGAL STANDARD

### A. The Five-Step Sequential Analysis

An individual is considered disabled for purposes of disability benefits if she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a) (3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment(s) must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). In the five-step sequential review process, the burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Id.* at 1098–99; 20 C.F.R. §§ 404.1520, 416.920.

In the first step of the analysis, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the second step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the third step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments, 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the fourth step, the ALJ must determine whether the claimant has sufficient RFC, despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g).

B. Standard of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). If an ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence, this Court must uphold the ALJ's determination that the claimant is not disabled. *See, e.g., Ukolov*

*v. Barnhart*, 420 F.3d 1002, 104 (9th Cir. 2005); *see also* 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1998 (9th Cir. 2008).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Where the evidence as a whole can support either outcome, the Court may not substitute its judgment for the ALJ's, rather, the ALJ's conclusion must be upheld. *Id*.

Plaintiff raises two issues for review in this appeal. Plaintiff contends that the ALJ erred by improperly discrediting medical opinions and Plaintiff's symptom testimony.

### III.   WEIGHING MEDICAL EVIDENCE

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to reject treating psychiatrist Matthew House, D.O.'s opinion.

#### A. Applicable Law

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); S.S.R. 96-5p, 1996 SSR LEXIS 2.

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician. *Id*. The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians. 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician is employed to cure and has a greater opportunity to know and observe the patient. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nonetheless, a treating physician's opinion is not conclusive as to

either a physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Once a court has considered the source of a medical opinion, it considers whether the Commissioner properly rejected a medical opinion by assessing whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The ALJ may reject the uncontradicted opinion of a treating or examining medical physician only for clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. The controverted opinion of a treating or examining physician can only be rejected for specific and legitimate reasons supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *citing Magallanes*, 881 F.2d at 752. The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding. *Magallanes*, 881 F.2d at 751-55. The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751. The ALJ must tie the objective factors or the record as a whole to the opinions and findings that he or she rejects. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

B.  Discussion

The ALJ gave Plaintiff's treating psychiatrist, Dr. House's, opinion no weight because it was inconsistent with the treatment notes, mental status examinations, therapy notes, and Plaintiff's reported activities of daily living. Plaintiff argues that it should have been afforded greater weight because Dr. House was a treating physician and a specialist in psychiatry, and because his treatment notes support his findings. Dr. House's opinion was contradicted by the State Agency psychiatric consultant, John Mouro, PhD. The ALJ gave great weight to Dr. Mourot's opinion because it was consistent with the medical evidence, subjective complaints, and activities of daily living.

9

The ALJ's conclusion that Dr. House's opinion was inconsistent with the treatment notes, mental status examinations, and activities of daily living is supported by substantial evidence in the record. The record contains four years of treatment notes with Dr. House. She began seeing Dr. House every month regularly in mid-2011 through the end of 2012. During this time, Dr. House's treatment notes are unremarkable and do not support his opinion that she was markedly limited in her ability to do many work activities and was unable to maintain permanent gainful employment. During 2011 and 2012, Dr. House noted that Plaintiff was dealing with her father's illness, which was difficult and made her sad at times. However, Dr. House repeatedly and consistently noted stable mood, normal speech, no suicidal ideations, no psychosis, and euthymic affect. Her thought content, when noted, was linear and coherent without flight of ideas or loosening of associations, and her cognition grossly intact. Her mood was occasionally down, but she had the appropriate sadness in dealing with her father's sickness. Plaintiff's therapist, Nadia Orme, MFT, made similar notations in her notes from Plaintiff's group and individual therapy sessions.

Dr. House's opinion was provided in a "check-the-box" form and he did not provide any clarification of his reasons for checking the various boxes he did. The notes do not make any mention of several areas in which Dr. House opined she had a marked limitation. For example, Dr. House opined that Plaintiff was markedly limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, but there is nothing in his treatment notes to support this conclusion. He also opined that she was markedly limited in her ability to ask simple questions or request assistance. There is nothing in his notes regarding her ability to ask simple questions or request assistance. Dr. House does not give any explanation to support his opinion. Hence, it is not supported by his treatment notes, and it is brief, conclusory and supported by minimal clinical findings.

In addition, Plaintiff reported activities of playing tennis several days a week and competing once a month, taking tennis lessons, attending weekly religious gatherings, exercising daily, driving, going places on her own, learning how to use her laptop at the Apple store, and taking her father places. She also attended and participated in group therapy every other week and saw Dr. House once a month. These activities require substantial memory, concentration,

10

persistence, social functioning, and adaptability. It also provides some indication that she is less than markedly impaired in the ability to maintain a schedule and to ask simple questions and request assistance.

Reasonable minds could accept this evidence as adequate to support the ALJ's decision to give Dr. House's restrictive opinion no weight. Hence, the ALJ's discrediting Dr. House's opinion because it was inconsistent with the treatment notes and Plaintiff's reported activities is without legal error and supported by substantial evidence in the record.

### C. Duty to Develop the Record

Plaintiff argues that the ALJ had a duty to develop the record because there was no consultative examination in the record, and the ALJ should have ordered one because he found that Dr. House's opinion was not supported by his treatment notes.

An "ALJ's duty to develop the record farther is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, all of Dr. House's records, with the therapy notes, were before the ALJ. There was nothing ambiguous about his opinion. He opined that Plaintiff could do no meaningful work, while Dr. Mouret, who reviewed Plaintiff's record including Dr. House's notes, opined that she could do a range of work with some restrictions. It is the ALJ's determination to reject a medical opinion, not a physician's. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)("[T]he ALJ is the final arbiter with respect to resolving conflicts and ambiguities in the evidence."). Here, the ALJ's duty to develop the record was not triggered.

## IV.    PLAINTIFF'S CREDIBILITY

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject her subjective symptoms testimony, and that his analysis lacked the support of substantial evidence. Plaintiff argues that the ALJ's interpretation of the evidence misrepresents the overall record.

### A. Applicable Law

The Ninth Circuit established two requirements for a claimant to present credible symptom testimony: the claimant must produce objective medical evidence of an impairment or

11

impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because it is unsupported by objective medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's subjective symptom testimony so long as it is not the only reason for discounting her testimony. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988); and *Brown-Hunter v. Colvin*, 2015 U.S. App. LEXIS 13560, *15 (9th Cir. Ariz. Aug. 4, 2015); *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir. 2014). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635. *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than

candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

      B.  <u>Discussion</u>

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. The ALJ found that her activities of daily living indicated that her allegations of signification limitations were not credible. He also found that the medical notes, including the treatment notes, do not sustain allegations of disabling mental impairment.

First, the ALJ discussed Plaintiff's daily activities and that they reflect that she is able to perform some activities, which is contrary to Plaintiff's claim of significant limitations. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The ALJ referenced Plaintiff's function report in which she said she did not understand instructions, her comprehension was poor, she could walk two miles before stopping to rest, and she could pay attention for thirty minutes. The ALJ summarized her daily activities. She alleged that she would attend to her personal care, watch TV, plant flowers, listen to music, use the computer, perform household duties, pay bills, prepare meals, drive a car, and go shopping. She would also spend time with others, visit family, exercise and play tennis. The ALJ elsewhere described that her testimony was that she did not go out of the house often, and was impaired in her ability to remember, understand, concentrate, follow instructions, and get along with others. She also

13

1    reported in group therapy that she played tennis regularly and enjoyed playing competitively. She
2    testified that she went to church weekly. Plaintiff's daily activities, such as playing tennis
3    competitively, learning to use her new laptop, driving her father to run errands demonstrate more
4    functional capacity than a claimant who occasionally does grocery shopping with some limited
5    walking for exercise, as in *Vertigan*. Plaintiff's activities frequently require extended
6    concentration, comprehension, physical exertion, and socialization above Plaintiff's indicated
7    capacity. Hence, these activities support the ALJ's conclusion that her statements regarding the
8    limiting effect of her symptoms are less than fully credible.

9    The ALJ also discusses that the alleged severity of Plaintiff's symptoms are unsupported
10   by the objective medical evidence.  He noted that the treatment notes in the record do not sustain
11   allegations of disabling mental impairment. As discussed in the preceding section, Dr. House's
12   notes consistently describe Plaintiff's mood, effect, and thought content as normal. She was
13   always cooperative in individual appointments and group therapy sessions. She attended
14   appointments with Dr. House once a month and appointments with Ms. Orme every other week.
15   As discussed, the treatment notes do not contain evidence of a disabling mental impairment. They
16   do not support her claim that her mental impairment is totally disabling.

17   The ALJ also mentions that the credibility of Plaintiff's allegations is undermined by
18   inconsistencies between the allegations and other record evidence. This is not a sufficiently
19   specific reason to discount her testimony because it does not identify the inconsistencies.
20   However, the ALJ has given other specific and legitimate reasons to discount Plaintiff's credibility
21   such that the Court may conclude that he did not arbitrarily discount her testimony.

22   In his credibility analysis, the ALJ found that Plaintiff's daily activities undermined her
23   allegations of significant limitations, and that the treatment notes in Plaintiff's medical record did
24   not sustain allegations of disabling mental impairment. Taken together, these reasons are
25   sufficiently specific, legally permissible grounds which are supported by substantial evidence in
26   the record to discount Plaintiff's credibility.

27   V.    CONCLUSION AND ORDER
28   For the foregoing reasons, the Court finds that the ALJ applied appropriate legal standards

1  and that substantial credible evidence supported the ALJ's determination that Plaintiff was not
2  disabled.  Accordingly, the Court hereby DENIES Plaintiff's appeal from the administrative
3  decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter
4  judgment in favor of the Commissioner and against Plaintiff.
IT IS SO ORDERED.

Dated:   **September 23, 2015**                    **/s/ Sandra M. Snyder**
                                                                        UNITED STATES MAGISTRATE JUDGE